**YEN PILCH ROBAINA & KRESIN PLC**
6017 N. 15th Street
Phoenix, Arizona 85014
Telephone: (602) 682-6450
Ty D. Frankel (027179)
TDF@yprklaw.com

**YEN PILCH ROBAINA & KRESIN PLC**
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
Telephone (619) 756-7748
Patricia N. Syverson (020191)
PNS@yprklaw.com

Attorneys for Plaintiff James Salgado

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| James Salgado, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Flowers Foods, Inc., a Georgia corporation, and Holsum Bakery, Inc., an Arizona corporation,<br><br>Defendants. | No.<br><br>**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff James Salgado ("Salgado"), individually, and on behalf of all other similarly situated persons, brings this action against Defendants Flowers Foods, Inc., a Georgia corporation, and Holsum Bakery, Inc., an Arizona corporation (both entities collectively referred to as "Flowers" or "Defendants") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and Arizona wage laws, A.R.S. § 23-350, *et seq.* ("Arizona Wage Statute"), and A.R.S. 23-363 *et seq.* ("Arizona Minimum Wage Statute").

- 1 -

**NATURE OF ACTION**

1.      This is a Collective and Class Action Complaint resulting from Defendants' misclassification of their Arizona bakery distributor drivers ("Distributors" and/or "Class Members") as "independent contractors."  Defendant Flowers Foods, Inc. and its subsidiary, Holsum Bakery, Inc. (collectively "Flowers" or "Defendants") are in the wholesale bakery business and rely on Distributors to deliver and stock bakery goods in grocery stores, mass retailers, and fast food chains.

2.      Plaintiff alleges on behalf of himself and all other similarly situated Distributors who elect to opt in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Action Members") that they are entitled to unpaid wages including unpaid minimum wage and overtime for all hours worked exceeding forty (40) in a workweek, liquidated damages, and attorneys' fees and costs, pursuant to the FLSA, 29 U.S.C. §§ 201, et seq., specifically 29 U.S.C. §§ 206, 207, 216(b).

3.      Plaintiff further alleges, pursuant to Fed. R. Civ. P. 23, on behalf of himself and a class of other similarly situated Distributors employed by Defendants within the State of Arizona (the "Arizona Class Members"), that they are entitled to timely payment of all wages due, plus interest, treble damages, and penalties as allowed by the Arizona Wage Statute, A.R.S. § 23-350, et seq., and that they are entitled to payment of the minimum wage, plus interest, statutory damages, and penalties as allowed by the Arizona Minimum Wage Statute, A.R.S. § 23-362, et seq.

4.      For at least three years prior to the filing of this action, Flowers has knowingly misclassified Plaintiff and others similarly situated as defined below, as independent contractors, and failed to pay them statutorily required wages.

**JURISDICTION AND VENUE**

5.      The FLSA authorizes civil actions by private parties to recover damages for violations of the FLSA's wage and hour provisions.  This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise from the same case and controversy as the FLSA claim.  The state and federal claims derive from a common nucleus of operative fact, the state law claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness, and comity.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because substantial decisions and events giving rise to the claims occurred in the State of Arizona within this District.

8.     The United States District Court for the District of Arizona has personal jurisdiction because Defendants conduct business within this District and the actions giving rise to this Complaint occurred in this District.

**PARTIES**

9.     Salgado is a resident of Pima County, Arizona.  Starting in 2016, Salgado worked for Defendants as a Distributor in Arizona.  He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers and Holsum Bakery.  Plaintiff Salgado operates out of a distribution center run by Holsum Bakery, Inc., in Tucson, Arizona.  Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as **Exhibit A** is the Consent to Become a Party Plaintiff and Opt-In to Lawsuit signed by Salgado.

10.     Flowers Foods, Inc. is a Georgia corporation headquartered in Thomasville, Georgia, with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757.  Flowers Foods is authorized to and regularly conducts business in Arizona, including in Pima County, through its subsidiary Holsum Bakery and its Distributors. Flowers maintains substantial direct and immediate control over its Bakeries and all of its Distributors and benefits from the work performed by the Distributors on its behalf.

11.     Holsum Bakery, Inc., a wholly owned subsidiary of Flowers Foods, Inc., is

an Arizona corporation headquartered in Phoenix, Arizona, with its principal place of business at 2338 W. Royal Palm Road, Suite J, Phoenix, Arizona.  Holsum Bakery is authorized to and regularly conducts business in Arizona, including in Pima County.

12.    At all relevant times, Flowers has employed Distributors and has had operations, offices and/or depots throughout Arizona, including in Tucson, Arizona.

13.    At all relevant times, Defendants have been "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

14.    Plaintiff and the other similarly situated Distributors are employees as defined in 29 U.S.C. § 203(e)(1), A.R.S. § 23-362(A), and A.R.S. § 23-350(2) and are non-exempt employees under 29 U.S.C. § 213(a)(1).

15.    At all relevant times, Defendants were employers as defined by 29 U.S.C. § 203(d), A.R.S. § 23-362(B), and A.R.S. § 23-350(3) and a "person" under 29 U.S.C. § 213(a)(1).

16.    At all relevant times, Plaintiff and the other members of the putative classes were engaged in commerce and/or worked for Defendants in an enterprise engaged in commerce.

17.    Defendants are, and at all relevant times were, engaged in interstate commerce as defined by the FLSA, 29 U.S.C. § 203, with a gross annual volume of sales made or business done greater than $500,000.

## COLLECTIVE ACTION ALLEGATIONS

18.    Plaintiff Salgado brings Counts I and II, the FLSA unpaid overtime claim and FLSA unpaid minimum wage claim, pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following similarly situated Distributors:

> All individuals who worked as Distributors for Flowers pursuant to Distribution Agreements with either Flowers or its subsidiary, Holsum Bakery Inc., in Arizona, classifying them as "independent contractors" in the three years prior to filing this lawsuit ("Collective Action Members").

19.     Plaintiff, on behalf of himself and all other similarly situated Distributors who worked for Flowers in Arizona during the last three years, seeks relief on a collective basis challenging Defendants' practice of failing to pay Distributors overtime and the minimum wage for all hours worked.  The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs to the collective action may be determined from Defendants' records and potential Collective Action Members may easily and quickly be notified of the pendency of this action.

20.     Plaintiff is similarly situated to the Collective Action Members because they all are subject to similar policies and procedures.  Defendants require the similarly situated Collective Action Members to work overtime but fail to pay them the overtime rate of one and one half times their regular hourly rate of pay for hours worked over forty in a workweek.  Defendants also require the similarly situated Collective Action Members to work hours for which they are not paid, causing their wages to fall below the minimum wage required by law.  The Collective Action Members are also similarly situated because they all subject to the substantially similar Distributor Agreements and are subject to similar pay practices and job duties.

21.     Defendants' overtime and minimum wage practices were routine and consistent.  Throughout the relevant time period over the past three years, the Collective Action Members regularly were not paid the proper overtime and minimum wage.

22.     Plaintiff and the Collective Action Members performed the same or similar job duties as Distributors.  Moreover, they regularly worked more than forty hours in a workweek without receiving proper overtime wages.  The requisite work they performed and the deductions Defendants would make on their weekly assessments also resulted in their wages routinely falling below the minimum wage.  Accordingly, the employees victimized by Defendants' unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

23.     Defendants' failure to pay overtime and minimum wage compensation at the

rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action. Thus, Plaintiff's experience is typical of the experience of the other Collective Action Members employed by Defendants.

24. The Collective Action Members, including Plaintiff, regardless of their individual circumstances, are entitled to overtime compensation for hours worked in excess of forty per workweek and the minimum wage. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

25. Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel experienced and competent in the practice of wage and hour law and class and collective action litigation. Plaintiff has no interest that is contrary to or in conflict with the putative members of this collective action.

## CLASS ACTION ALLEGATIONS

26. Plaintiff Salgado brings Counts III and IV, the Arizona Wage Statute unpaid wage claims, as a Rule 23 class action on behalf of himself and the following persons:

> All individuals who worked as Distributors for Flowers pursuant to Distribution Agreements with either Flowers or its subsidiary, Holsum Bakery Inc., in Arizona, classifying them as "independent contractors" in the three years prior to filing this lawsuit ("Arizona Class Members").

27. Plaintiff's Rule 23 class claims satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

28. Plaintiff's Rule 23 state law class claims satisfy the numerosity requirement of a class action. Defendants have employed a large number of Distributors. The proposed Class Members are so numerous that joinder of all members is impracticable. Class Members can readily be identified from business records maintained by Defendants.

29. Questions of law and fact common to the Arizona Class Members

predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all Arizona Class Members.  Among the questions of law and fact common to Plaintiff and the Arizona Class Members are:

        a.     whether Defendants employed the Arizona Class Members within the meaning of the Arizona Wage Statute and Arizona Minimum Wage Statute;

        b.     whether Defendants owe the Arizona Class Members wages in exchange for all work performed;

        c.     whether Defendants owe the Arizona Class Members the minimum wage; and

        d.     whether Defendants are liable for damages under the Arizona Wage Statute and Arizona Minimum Wage Statute, including but not limited to compensatory damages, statutory damages, interest, and treble damages.

30.    Plaintiff's claims under Arizona state law are typical of those of the Arizona Class Members because they have been employed in the same or similar positions as Plaintiff and were subject to the same or similar unlawful wage practices as Plaintiff.

31.    The common questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

32.    A class action is appropriate for the fair and efficient adjudication of this controversy.  Defendants acted or refused to act on grounds generally applicable to the entire class.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and substantially impair or impede the ability of the class members to protect their interests.  The damages suffered by individual class members may be relatively small,

and the expense and burden of individual litigation make it virtually impossible for the members of the class action to individually seek redress for the wrongs done to them.

33.     Plaintiff will fairly and adequately represent the interests of the Arizona Class Members and has retained counsel experienced and competent in wage and hour law and class action litigation.  Plaintiff has no interest that is contrary to or in conflict with those members of this class action.

**FACTS GIVING RISE TO THE CAUSES OF ACTION**

34.     Flowers is one of the largest producers and distributors of packaged bakery foods in the United States with 2021 sales of $4.3 billion.  Flowers operates bakeries across the country that produce such recognizable brands as Nature's Own, Dave's Killer Bread, Wonder, Canyon Bakehouse, and Tastykake.

35.     Flowers' business consists of developing, baking, and distributing bakery and snack food products to retail customers, using a centralized network of communication, distribution, and warehousing facilities.

36.     Holsum Bakery is located in Arizona and operates bakeries and several of its warehouses on behalf of Flowers.

37.     Flowers, through its network of subsidiary bakeries, such as Holsum Bakery, and Distributors, such as Plaintiff, delivers bakery and snack products to third party retail outlets, such as grocery store, mass retailers, and fast food chains.

38.     Flowers enters into agreements with the retail outlets, pursuant to which Flowers commits to deliver, and the retail outlets agree to provide shelf space for, baked goods distributed by Flowers and Holsum Bakery.

39.     To fulfill its contractual obligations with the retail outlets and distribute its baked goods, Flowers employs Distributors such as Salgado to pick up fresh baked goods from Flowers' Holsum Bakery warehouses in Arizona for delivery to established customers of Flowers in the Distributors' defined geographic territories within Arizona.

40.     Distributors are an integral part of Flowers' business of selling fresh baked goods, and the services Distributors perform – distributing Flowers' baked goods to outlets throughout Arizona – are essential to the conduct of that business.

41.     As a required part of their routine for Flowers, Distributors go to one of Defendants' warehouses in the morning to pick up the fresh baked goods and deliver the fresh baked goods to Flowers' customers.

42.     The Distributors stock and arrange Flowers' merchandise at the customers' outlets pursuant to Flowers' direction, remove damaged and "overcode" goods, place Flowers' advertising materials, and engage in other activities mandated by Flowers.

43.     The Distributors then go back to the warehouse or go home to input customer orders and complete paperwork.

44.     On certain days each week, when there are no fresh baked goods to be delivered, Distributors drive their personal vehicles (less than 10,000 lbs.) to do "pull ups" for the purpose of restocking and rotating stock.

45.     As a condition of employment, the Distributors such as Salgado have signed lengthy Distribution Agreements with either Flowers or its subsidiary Holsum Bakery that incorrectly and falsely purport to classify the Distributors as "independent contractors" rather than employees of Flowers or its subsidiary Holsum Bakery.

46.     The Distribution Agreements are form contracts, the terms of which are identical or substantially similar for all Class Members.

47.     The Distribution Agreements are adhesion contracts drafted exclusively by Flowers or its subsidiary Holsum Bakery.  Flowers does not negotiate the material terms of the Distribution Agreements with the Distributors, who are required to sign the agreements on a "take it or leave it" basis.

48.     The Distribution Agreements purport to sell the "distribution rights" of defined sales areas for the delivery of fresh baked goods.

49.    The Distribution Agreements contain various statements purporting to classify Class Members as "Distributors" and/or "independent contractors" with the right to operate the business using Distributor's own judgment and discretion.

50.    At the same time, even pursuant to the Distribution Agreements, Flowers monitors a Distributor's performance; alters the amount of product ordered by the Distributor; determines which retail outlines a Distributor will service; mandates the prices charged for product; and restricts the Distributor's participation in other business activity considered competitive with Flowers' products.

51.    Further, pursuant to the Distribution Agreements, Flowers retains control over termination and sale of the "service area", including the ability to: terminate the contract whenever Flowers unilaterally determines a "curable breach" and/or a "non-curable breach" of any of the contract provisions has occurred; retain proceeds for services areas Flowers deems abandoned by a Distributor; charge the Distributor a fee to service an area designated by Flowers; retain a general security interest in the distribution rights; require Distributors to obtain Flowers' approval for subsequent buyers of the distribution rights; retain the right of first refusal upon sale of the distribution rights; retain the right to require a sale of the distribution rights upon death or long term disability of the Distributor; retain the right to sell the distribution rights on behalf of the estate upon death of the Distributor if the estate does not sell within 90 days of the date Flowers requires the sale; require that all route sales be processed through Flowers at a cost of 3% of the sales price; and retain a limited power of attorney with "full and complete authority" to transfer the distribution rights or perform any of the Distributor's obligations pursuant to the Distribution Agreement.

52.    Illustrative of the control Defendants have over the Distributors, on or about May 26, 2022, Salgado notified Flowers he was ill with COVID-19 and was temporarily unable to service his routes.  Rather than simply temporarily assist him in servicing his routes, five days later Flowers determined Salgado was in breach of the Distributor Agreement claiming he had "abandoned his distributor business" and giving him 5 days on

one route and 10 days on a second route to "cure" the abandonment, which Salgado was unable to do given his temporary medical condition.  Flowers proceeded to immediately start servicing the routes on his behalf while maintaining the proceeds and charging him a servicing fee.  Then, upon completion of the notice period, Flowers told Salgado he must sell his routes within 60 days or else Flowers would sell them on his behalf.  Despite taking his routes away, Flowers has yet to sell the routes but is continuing to charge Salgado servicing fees and refuses to allow him the opportunity to service the routes now that he has recovered from COVID-19 to avoid continual fees being charged to him.

53.     The Distribution Agreements have been designed by Flowers to circumvent the requirements of the FLSA by purporting to shift the burden of employment on to the Distributors themselves, when in fact Flowers maintains extensive control over the Distributors who remain entirely economically dependent on Flowers to obtain business and service the area designated by Flowers.

54.     Distributors do not exercise independent business judgment in connection with the services they perform for Flowers.

55.     Distributors do not sell products to Flowers' customers, and Flowers negotiates the pricing of the products delivered by Distributors to its customers.  The result is that Distributors' job duties and ability to earn income is tied directly to the same and promotion of products outside of their control.

56.     For this purpose, Distributors utilize specific equipment required by Flowers, such as a handheld computer device and "proprietary administrative services" that enables Flowers to account for its products and fix the prices of its products.  Distributors are charged a fee to access these required utilities.

57.     Distributors are not paid by Flowers' customers.  Instead, they are paid by Flowers.

58.     Flowers utilizes a pay-by-scan program with some of its retail outlet customers.  In circumstances where the pay-by-scan does not account for all sales, the

discrepancy is deducted from the amount the Distributors are paid.  The Distributors have no ability to discuss the pay-by-scan issues with the retail outlets as such issues are exclusively handled by Flowers.

59.   Flowers has created and utilizes the Flowers Bakeries Distributor Communications Center as a means of distributing all reports and statements, including weekly assessment statements and bakery reports, to Distributors.  The Flowers' Distributor Center also notifies Distributors of upcoming promotions and marketing information the Distributors are to utilize with their retail customers.

60.   Flowers also unilaterally deducts various fees from the Distributors' weekly assessments, such as administrative fees and warehouse fees.

61.   Flowers prohibits Distributors from delivering fresh baked goods that are in direct competition with brands represented by Flowers.

62.   Flowers also employs supervisors who work at the warehouses and who enforce strict rules and requirements on Salgado and the other Distributors and have extensive supervisory and disciplinary control over the Distributors.

63.   Flowers' supervisors unilaterally increase or decrease orders placed by Distributors with or without prior notice to the Distributors.

64.   Flowers' bakeries also unilaterally determine which fresh baked goods are available for order and delivery by the Distributors.

65.   Flowers' supervisors also determine Salgado's and the other Distributors routes and frequency of delivery as well as times at which they may arrive at the warehouse and when they must leave the outlets.

66.   There are also unwritten policies that Distributors are expected to follow. These policies govern the ordering of product, frequency of deliveries and manner of store service.  For example, Flowers has an unwritten policy of refusing to accept "excessive" returned products.

67.     Flowers' supervisors provide written warnings to Salgado and Distributors for failing to keep all products within code mandated by Flowers and/or failing to comply with service and merchandising requests of an outlet within the geographic area serviced by the Distributors.

68.     Flowers retains the ability to terminate Salgado and the Distributors, for example, for distributing products Flowers determines to be out of code.

69.     Furthermore, the outlets with which Flowers contracts and to which Salgado and the other Distributors deliver goods on behalf of Flowers, contact Flowers supervisors regarding complaints about the manner and means of Salgado's and the other Distributors' performance.

70.     Flowers supervisors, in turn, contact Salgado and the other Distributors to address any individual performance problems that are brought to Flowers' attention by the outlets to which Salgado and the other Distributors deliver goods on behalf of Flowers.

71.     When Distributors perpetrate a so-called "breach" of a Distribution Agreement, whether disclosed or undisclosed, known or unknown, they are subject to discipline by Flowers, up to and including termination.

72.     Flowers documents such so-called "breaches" with letters which are drafted by various members of Flowers' management team, delivered to Distributors and retained in the Distributors' files.

73.     Distributors' investment in equipment to operate their route is relatively low. Many Distributors use their personal vehicles and a trailer to transport Flowers products to retailers.  Apart from the purchase of a small trailer, there is no other investment necessary because Defendants require Distributors to use their computer equipment, administrative support, warehouse space, advertisements, promotional materials, bakery trays, market advice, strategic development, and control virtually every other business necessity.  Plaintiff and Distributors typically drive a box truck most days of the week, and routinely use their small personal cars to transport Flowers products.  Defendants even arrange for insurance

and vehicle financing on behalf of Distributors; Distributors pay for the insurance through wage deductions.

74.     Salgado entered into two Distributor Agreements, one in 2016 and the other in 2018.  Salgado has been consistently servicing those routes until May 26, 2022.

75.     At all relevant times Salgado has typically worked as many as eighty (80) to ninety (90) hours per week or more for Flowers.

76.     Salgado typically works, and at all relevant times has typically worked, on Mondays from 6:00 a.m. to 7:00p.m., on Tuesdays from 6:00 a.m. to 10:00 p.m., on Wednesdays from 7:00 a.m. to 2:00 p.m., on Thursdays from 6:00 a.m. to 7:00 p.m., on Fridays from 6:00 a.m. to 10:00 p.m., on Saturdays from 7:00 a.m. to 7:00 p.m., and on Sundays from 7:00 a.m. to 4:00 p.m.  In addition to these hours, Salgado would typically have another hour to hour and a half of paperwork each day that had to be completed after running his routes.

77.     Given Salgado's typical schedule, Salgado's weekly pay is below the minimum wage and he is not being compensated for overtime.  For example, on his weekly assessment for the week May 15, 2022 to May 21, 2022 on Route 8313, Salgado received $979.15.  Based on the number of hours he typically worked (between 80-90 hours), this resulted in an hourly wage of between $10.88 and $12.33.  Likewise, Salgado's weekly assessment for the week of March 27, 2022 to April 2, 2022 on Route 8316 shows he was paid $242.38, resulting in an hourly wage between $2.69 and $3.02 based on his typical schedule.  However, for this weekly assessment, Mr. Salgado would not even have been paid the minimum wage if he had only attributed half his typical weekly schedule (*i.e.*, 40 hours) to this one route, resulting in an hourly wage of $6.05.

78.     Salgado is aware of the other Distributor's work schedules, which are also over forty hours per week.  He is aware of their working hours because he sees the other Distributors at the warehouse in the morning and then again in the afternoon.  Additionally,

he communicates regularly with other distributors, who are working at the same time he is working.

79.     Salgado's duties and compensation are indicative of similarly situated Distributors.

80.     Like Salgado, Distributors are, and at relevant times have been, regularly required to work for Flowers in excess of forty (40) hours per week without overtime compensation.

81.     Further, there have been times that due to issues with the pay-to-scan process or unilateral deductions on a weekly assessment, the amount Salgado as paid was $0.00 or even less (thereby essentially owing the Company).  For example, on his weekly assessment for the week November 28, 2021 to December 4, 2021 on Route 8316, the amount Salgado should have been paid was $1,055.14 but after deductions, including Territory Payment, SBT Shrink Charges and Administrative Fees, Salgado ended up owing the Company $1,289.56 and was paid $0.00 on that weekly assessment, resulting in Salgado being paid less than the minimum wage.  Similarly, on his weekly assessment for the same week on Route 8313, the amount Salgado should have been paid was $2,352.65 but after deductions, including Truck/Business Insurance, Disability Insurance, SBT Shrink Charges and Administrative Fees, Salgado ended up owing the Company $178.23 and was paid $0.00 on that weekly assessment, again resulting in Salgado being paid less than the minimum wage.  Thus, between the two routes, Salgado was paid $0.00 for that week which was a routine occurrence.

82.     Flowers' improper policies and compensation practices applied to Salgado and all similarly situated Distributors he purports to represent.

83.     For example, Flowers required all of its Distributors, including Plaintiff, to execute Distribution Agreements and perform their duties pursuant to written Flowers' policies uniformly applicable to all Distributors governing their job duties and compensation practices applicable to them.

84.     All the Distributors are uniformly subject to the same unlawful compensation practices that Salgado was subject to during his tenure at Flowers.

85.     During his employment, Salgado complained to management about Flowers' unlawful pay practices on several occasions, including its failure to pay wages due resulting in unpaid wages, minimum wage, and overtime.

86.     Further, for years, Defendants' wage scheme has been repeatedly challenged by other Distributors in Courts both in Arizona and throughout the country.

87.     Despite complaints about Flowers' wage violations and other Court actions, Defendants did not investigate the allegations and did not modify their unlawful pay practices, which Defendants willfully continue.

**<u>COUNT ONE</u>**
**COLLECTIVE CTION FOR VIOLATION OF THE**
**FAIR LABOR STANDARDS ACT**
**(Failure to Properly Pay Overtime Wages and Record Keeping Violations - FLSA -**
**29 U.S.C. § 207 *et seq.*; Brought Against Defendants by Plaintiff James Salgado**
**Individually and on Behalf of the Collective Action Members)**

88.     The foregoing paragraphs are incorporated as if set forth in their entirety.

89.     The Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* is a remedial statute designed to ensure that employees who are "suffered" or "permitted" to work for an employer are paid overtime wages for all hours worked in excess of 40 hours in individual work weeks.

90.     At all relevant times, Defendants have been, and continue to be, subject to the overtime provisions of the FLSA because their employees are engaged in interstate commerce and Defendants have annual revenues in excess of $500,000.

91.     There are no exemptions to the FLSA's minimum wage requirements applicable in this matter.

92.     Salgado is a non-exempt employee entitled to the statutorily mandated overtime pay according to the FLSA.

93.     Flowers and Holsum Bakery are employers pursuant to 29 U.S.C. § 203(d).

94.   To avoid their obligations to pay overtime under the FLSA, Flowers and its subsidiary Holsum promulgated a business model in which Flowers essentially sold jobs to employees through a fictional or nominal distribution agreement.

95.   Flowers and its subsidiary Holsum falsely designated the Collective Action Members as independent contractors for Defendants' own benefit.

96.   Despite the facade of independence, the actual contract agreement and the actual working conditions of Salgado and Class Members indicate that Defendants have the exclusive authority to control almost all aspects of the "independent" delivery business, including customer relations, negotiations of customer contracts, assignment of work, manner in which work is to be performed, and materials and equipment to be used.

97.   Flowers has failed to comply with 29 U.S.C. § 207 because Salgado and the other Collective Action Members work for Defendants in excess of forty hours per week, but Flowers has failed to pay them for those hours at the statutorily required rate of one and one-half times their regular rate of pay as required by the FLSA.

98.   Defendants willfully violated the FLSA by failing to pay Plaintiff and the other Collective Action Members all overtime wages due.

99.   Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions complied with the FLSA.

100.   Flowers' violations of the FLSA are, and at all relevant times were, intentional and willful, and accordingly, a three-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

101.   As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, Defendants have unlawfully withheld overtime wages from Plaintiff and the Collective Action Members.   Accordingly, Defendants are liable to Plaintiff and the Collective Action Members for unpaid wages including overtime compensation, an additional equal amount in liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Salgado and all similarly situated employees demand judgment against Defendants, and pray this Court:

  a. Certify the claim set forth in Count I above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly, non-exempt Distributors, who worked for Flowers during the last three years in Arizona, informing them of their right to file consents to join the FLSA portion of this action;

  b. Designate Salgado as the Representative Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

  c. Award Salgado and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

  d. Award Salgado and all similarly situated employees prejudgment and post-judgment interest as provided by law;

  e. Award Salgado and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendants are financially responsible for notifying the Collective Action Members of Defendants' alleged wage and hour violations; and

  f. Award Salgado and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**COUNT TWO**
**COLLECTIVE ACTION FOR VIOLATION OF THE**
**FAIR LABOR STANDARDS ACT**
**(Failure to Properly Pay Minimum Wage and Record Keeping Violation – FLSA –**
**29 U.S.C. § 206 *et seq.*; Brought Against Defendants by Plaintiff Salgado Individually**
**and on Behalf of the Collective Action Members)**

102. The foregoing paragraphs are incorporated as if set forth in their entirety.

103. The Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* is a remedial statute designed to ensure that employees who are "suffered" or "permitted" to work for an

employer are paid the minimum wage for all hours worked in individual work weeks.

104.    At all relevant times, Defendants have been, and continue to be, subject to the minimum wage provisions of the FLSA because its employees are engaged in interstate commerce and Defendants have annual revenues in excess of $500,000.

105.    There are no exemptions to the FLSA's minimum wage requirements applicable in this matter.

106.    Salgado is a non-exempt employee entitled to the statutorily mandated minimum wage according to the FLSA.

107.    Flowers and Holsum Bakery are employers pursuant to 29 U.S.C. § 203(d).

108.    To avoid their obligations to pay minimum wage under the FLSA, Flowers and its subsidiary Holsum promulgated a business model in which Flowers essentially sold jobs to employees through a fictional or nominal distribution agreement.

109.    Flowers and its subsidiary Holsum falsely designated the Class Members as independent contractors for Flowers' own benefit.

110.    Despite the facade of independence, the actual contract agreement and the actual working conditions of Salgado and Class Members indicate that the Flowers has the exclusive authority to control almost all aspects of the "independent" delivery business, including customer relations, negotiations of customer contracts, assignment of work, manner in which work is to be performed, and materials and equipment to be used.

111.    Flowers has failed to comply with 29 U.S.C. § 207 because Salgado and the other Class Members performed work for Flowers, but Flowers has failed to pay them minimum wage for those hours as required by the FLSA.

112.    Defendants willfully violated the FLSA by failing to pay Plaintiff and the other Collective Action Members all the minimum wage due.

113.    Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions complied with the FLSA.

114.    Flowers' violations of the FLSA are, and at all relevant times were, intentional

and willful, and accordingly, a three-year statute of limitation applies, pursuant to 29 U.S.C. § 255.

115.   As a result of the aforesaid willful violations of the FLSA's minimum wage pay provisions, Defendants have unlawfully withheld minimum wages from Plaintiff and the Collective Action Members.  Accordingly, Defendants are liable to Plaintiff and the Collective Action Members for unpaid wages including minimum wage compensation, an additional equal amount in liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendants, and pray this Court:

a.   Certify the claim set forth in Count II above as a collective action pursuant to Section 216(b) of the FLSA and issue notice to all similarly-situated hourly employees, regardless of actual title, who worked for Defendants as Distributors in Arizona during the last three years, informing them of their right to file consents to join the FLSA portion of this action;

b.   Designate Plaintiff Salgado as the Representative Plaintiff of the Collective Action and undersigned counsel as the attorneys representing the Collective Action Members;

c.   Award Salgado and all similarly situated employees compensatory and liquidated damages under 29 U.S.C. § 216(b);

d.   Award Salgado and all similarly situated employees prejudgment and post-judgment interest as provided by law;

e.   Award Salgado and all similarly situated employees attorneys' fees and costs as allowed by Section 216(b) of the FLSA, including that Defendants are financially responsible for notifying the Collective Action Members of Defendants' alleged wage and hour violations; and

f.      Award Salgado and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

**<u>COUNT THREE</u>**

**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE ARIZONA WAGE STATUTE**

**(Failure to Timely Pay Wages Due, A.R.S. § 23-350 *et seq.*; Brought Against Defendants by Plaintiff James Salgado Individually and on Behalf of the Arizona Class Members)**

116.    The foregoing paragraphs are incorporated as if set forth in their entirety.

117.    The Arizona Wage Act, A.R.S. § 23-351 *et. seq.* requires employers to pay employees wages for all hours worked.  An employer may not withhold or divert any portion of an employee's wages without legal authority, written authorization by the employee, or as a result of a good faith dispute over the wages due.

118.    Flowers was aware that, under A.R.S. §§ 23-351 to 23-353, it was obligated to pay all wages due to Salgado and the other Arizona Class Members.

119.    Flowers has failed to pay Salgado and the other Arizona Class Members for all hours worked because they failed to pay all wages due Salgado and the other Arizona Class Members, including regular wages and overtime and unilateral deductions that were due Salgado and the other Arizona Class Members; therefore it has violated A.R.S. § 23-350 *et. seq.*

120.    Flowers failed to timely pay Salgado and the other Arizona Class Members wages they are due without a good faith basis for withholding the wages.

121.    Flowers has willfully failed and refused to timely pay wages due to Salgado and the other Arizona Class Members.  As a result of Flowers' unlawful acts, Salgado and the other Arizona Class Members are entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

122.    As a result of Flowers' actions, Salgado and the other Arizona Class Members have been harmed, have suffered substantial losses and have been deprived of compensation to which they are entitled, and are thus entitled to an award of the unpaid wages, with

1   prejudgment interest thereon, including treble damages, together with attorneys' fees and

2   costs, pursuant to A.R.S. § 23-355.

3       123.   Defendants have willfully failed and refused to timely pay wages due to

4   Plaintiff and the Arizona Class Members.  As a result of Defendants' unlawful acts, Plaintiff

5   and the Arizona Class Members are entitled to the statutory remedies provided pursuant to

6   A.R.S. § 23-355.

7       124.   The state law claim, if certified for class-wide treatment, may be pursued by

8   all similarly situated persons who do not opt out of the Class.

9       WHEREFORE, Plaintiff and all similarly situated employees demand judgment

10  against Defendants and pray this Court:

11          a.   Certify the state law claim set forth in Count Three above as a class

12               action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

13          b.   Designate Plaintiff Salgado as the Class Representative of the Arizona

14               Class Members and undersigned counsel as the attorneys representing

15               the Arizona Class Members;

16          c.   Award Salgado and all similarly situated employees compensatory

17               damages and treble damages, plus costs and attorneys' fees, and all

18               available remedies pursuant to A.R.S. § 23-350 *et seq.*;

19          d.   Award Salgado and all similarly situated employees prejudgment and

20               post-judgment interest as provided by law; and

21          e.   Award Salgado and all similarly situated employees such other relief

22               as this Court deems fair and equitable, including injunctive relief.

23                          **COUNT FOUR**
**FED.R.CIV.P. 23 CLASS ACTION FOR VIOLATION OF THE**
24                    **ARIZONA MINIMUM WAGE STATUTE**
**(Failure to Pay Minimum Wage, A.R.S. § 23-362 *et seq.*; Brought Against Defendants**
25          **by Plaintiff Salgado Individually and on Behalf of the Arizona Class Members)**

26      125.   The foregoing paragraphs are incorporated as if set forth in their entirety.

27

28

126.     At all material times hereto, Plaintiff and the Arizona Class Members were employed by Defendants within the State of Arizona and have been entitled to the rights, protections, and benefits provided under the Arizona Minimum Wage Statute.

127.     Plaintiff and the similarly situated employees were entitled to the minimum wage as defined by A.R.S. § 23-363.

128.     Defendants were employers pursuant to A.R.S. § 23-362(B).

129.     Defendants were aware that, under A.R.S. § 23-363, they were obligated to pay minimum wage due to Plaintiff and the Arizona Class Members.

130.     Defendants failed to pay Plaintiff and the Arizona Class Members minimum wage due without a good faith basis for withholding wages.

131.     Defendants have willfully failed and refused to pay minimum wage due to Plaintiff and the Arizona Class Members.  As a result of Defendants' unlawful acts, Plaintiff and the Arizona Class Members are entitled to the statutory remedies pursuant to A.R.S. § 23-364, including the balance of wages owed, interest thereon, an additional amount equal to twice the underpaid wages, and attorneys' fees and costs.

132.     The state law claim, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

WHEREFORE, Plaintiff and all similarly situated employees demand judgment against Defendants and pray this Court:

        a.     Certify the state law claim set forth in Count Four above as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

        b.     Designate Plaintiff Salgado as the Class Representative of the Arizona Class Members and undersigned counsel as the attorneys representing the Arizona Class Members;

        c.     Award Salgado and all similarly situated employees compensatory damages and statutory damages, plus costs and attorneys' fees, and all available remedies pursuant to A.R.S. § 23-364;

d.     Award Salgado and all similarly situated employees prejudgment and post-judgment interest as provided by law; and

e.     Award Salgado and all similarly situated employees such other relief as this Court deems fair and equitable, including injunctive relief.

## **DEMAND FOR JURY TRIAL**

Plaintiff James Salgado hereby demands a jury trial on all claims with respect to which he may have the right to a jury.

RESPECTFULLY SUBMITTED this 15th day of September, 2022.

**YEN PILCH ROBAINA & KRESIN PLC**
By   /s/ Ty D. Frankel
Ty D. Frankel
6017 N. 15th Street
Phoenix, Arizona 85014

**YEN PILCH ROBAINA & KRESIN PLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

Attorneys for Plaintiff