**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Salgado,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Flowers Foods Incorporated, et al.,<br><br>　　　　　Defendants. | No. CV-22-00420-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is Plaintiff James Salgado's Motion for Conditional FLSA Certification and to Authorize Notice to Similarly Situated Persons Under 29 U.S.C. § 216(b) and for Expedited Discovery. (Doc. 66.) The motion has been fully briefed,[1] and the Court finds that oral argument would not aid its decision on this matter. *See* LRCiv 7.2(f). For the reasons stated below, the Court will grant Plaintiff's Motion.

## BACKGROUND

In 2016, Plaintiff began working for Holsum Bakery, Inc. ("Holsum") and its parent company, Flowers Foods, Inc. ("Flowers"), (collectively, "Defendants"), as a bakery distributor driver. (Doc. 13 ¶¶ 1, 10.) As a distributor, Plaintiff delivers fresh baked goods to local retailers, operating out of a Tucson distribution center run by Holsum. (*Id.* ¶ 10.) Distributors also stock and arrange merchandise, remove damaged goods, and place advertising materials in retail locations, among other responsibilities. (*Id.* ¶ 43.)

In September 2022, Plaintiff brought this action on behalf of himself and other

---

[1] (*See* Docs. 66, 77, 78.)

similarly situated distributors ("Distributors"). (Doc. 1.) In his First Amended Collective Action and Class Action Complaint ("FAC"), Plaintiff alleges that, over the past three years, Defendants have misclassified their distributors as independent contractors and failed to pay regular and overtime wages. (Doc. 13 ¶¶ 82–84, 97, 122–23.) The FAC asserts five counts against Defendants. (*Id.* at 16–26.) Counts One and Two are relevant to the Motion for Conditional Certification.[2] In Count One, Plaintiff, individually and on behalf of the Distributors, alleges Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, by failing to pay overtime wages. (*Id.* ¶¶ 90–103.) In Count Two, Plaintiff, individually and on behalf of the Distributors, alleges Defendants violated the FLSA by failing to pay the minimum wage. (*Id.* ¶¶ 104–17.)

Plaintiff requests an order conditionally certifying this case as a collective action under 29 U.S.C. § 216(b) and ordering notice be issued to current and former Flowers' Distributors working in Arizona from September 15, 2019 to the date the notice is distributed. (Doc. 66 at 2.) Plaintiff also requests approval of the proposed notice and consent to opt-in forms, (Doc. 66-1 at 1–6, Exs. 1–2), and to send notice via mail and email. (Doc. 66 at 2.) Lastly, Plaintiff asks the Court to order Defendants to produce names, addresses, and email addresses of the Distributors within 14 days of the date of the Court's ruling on Plaintiff's Motion for Conditional Certification. (*Id.*)

**DISCUSSION**

**I.   Legal Standard**

A. <u>Collective Actions Under the Fair Labor Standards Act</u>

Section 207 of the FLSA requires an employer to pay its employees time and a half for any hours worked above 40 in a workweek. 29 U.S.C. § 207(a)(1); *see Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 960 (D. Ariz. 2020) ("The FLSA mandates that employers pay overtime compensation for time worked in excess of 40 hours in a week unless an exemption applies."). Section 206 requires employers to pay their employees a

---

[2] Counts Three and Four allege violations of Arizona wage statutes. (Doc. 13 ¶¶ 118–34.) Plaintiff anticipates pursuing class certification for the state law claims under Federal Rule of Civil Procedure 23 in a future motion. (Doc. 66 at 3 n.1.) Count Five is a breach of contract claim brought on behalf of Plaintiff individually. (Doc. 13 ¶¶ 135–45.)

minimum wage of $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). An employer who violates § 206 or § 207 is liable for double damages. 29 U.S.C. § 216(b). The principal purpose behind the FLSA is "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). "The FLSA's minimum wage and overtime provisions are central among the protections the Act affords to workers." *Adair v. City of Kirkland*, 185 F.3d 1055, 1059 (9th Cir. 1999).

When an employer violates the FLSA's minimum wage and overtime provisions, an employee may bring a collective action on "behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). Collective actions serve to "reduce the burden on plaintiffs through the pooling of resources" and "make efficient use of judicial resources by resolving common issues of law and fact together." *Gilburd v. Rocket Mortg. LLC*, No. CV-23-00010-PHX-DLR, 2023 WL 8480062, at *1 (D. Ariz. Dec. 7, 2023).

B. <u>Conditional Certification</u>

District courts within the Ninth Circuit follow a two-step process when determining whether to certify a collective action under the FLSA. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018). The first step is preliminary, or conditional, certification, which requires plaintiffs to facially satisfy the "similarly situated" requirement. *Id.* "'The sole consequence' of a successful motion for preliminary certification is 'the sending of court-approved written notice' to workers who may wish to join the litigation." *Id.* at 1101. Putative class members who received notice then have a period of time in which they may opt-in to the action, and further discovery takes place. *See Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925–26 (D. Ariz. 2010). The second step takes place after discovery, when defendants typically move for decertification on the theory that the plaintiffs' status as similarly situated was not borne out by the fully developed record. *Campbell*, 903 F.3d at 1000. The second step determination "involves several factors, including the disparate factual and employment settings of the individual employees; the defenses available to the employer that apply to different employees

differently; and fairness and procedural considerations." *Flores v. Velocity Exp., Inc.*, No. 12-CV-05790-JST, 2013 WL 2468362, at *5 (N.D. Cal. June 7, 2013).

Plaintiffs' burden at the conditional certification stage is light, but not automatic. *Coyle v. Flowers Foods Inc.*, No. CV-15-01372-PHX-DLR, 2016 WL 4529872, at *2 (D. Ariz. Aug. 30, 2016). Courts require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Colson*, 687 F. Supp. 2d at 925 (D. Ariz. 2010) (quoting *Thiessen v. Gen Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)). In other words, a plaintiff must show "some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Id.* The shared issue of law or fact must be material to the disposition of the FLSA claims. *Campbell*, 903 F.3d at 1117. "Plaintiffs' allegations need neither be strong nor conclusive." *Colson*, 687 F. Supp. 2d at 926. "Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members." *Scales v. Info. Strategy Design Inc.*, 356 F. Supp. 3d 881, 885 (D. Ariz. 2018) (quoting *Juvera v. Salcido*, 294 F.R.D. 516, 520 (D. Ariz. 2013)). The court must "be satisfied that a reasonable basis exists for the plaintiffs' claims or class wide injury." *Id.* at 885–86 (quoting *Bollinger v. Residential Cap., LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011)). "It is not the Court's role to resolve factual disputes . . . or . . . decide substantive issues going to the ultimate merits . . . at the preliminary certification stage." *Colson*, 687 F. Supp. 2d at 926 (quoting *Barrus v. Dick's Sporting Goods, Inc.*, 465 F. Supp. 2d 224, 230 (W.D.N.Y. 2006)).

A plaintiff does not need to submit declarations or affidavits from other proposed class members to meet his evidentiary burden. *Hart v. U.S. Bank*, No. CV 12-2471-PHX-JAT, 2013 WL 5965637, at *4–5 (D. Ariz. Nov. 8, 2013). Often, some limited discovery will have occurred before a motion for conditional certification; this does not alter the lenient burden of proof at this stage. *See id.*

//

## II. Analysis

### A. Conditional Certification

Plaintiff has met his burden of showing that the putative class members are similarly situated for purposes of conditional certification. The putative class members are current and former Flowers' Distributors working in Arizona from September 15, 2019 to the date the notice is distributed. (Doc. 66 at 2.) In the FAC, Plaintiff alleges Defendants have knowingly misclassified Plaintiff and Distributors as independent contractors. (Doc. 13 ¶¶ 4, 19.) Plaintiff argues he is similarly situated to Distributors because: (1) both he and Distributors "are [] subject to similar policies and procedures"; (2) Defendants consistently require Plaintiff and Distributors to work overtime and work hours for which they are not paid; and (3) Plaintiff and Distributors are subject to "substantially similar Distributor Agreements" and "similar pay practices" and perform "the same or similar job duties." (*Id.* ¶¶ 19–26.) In other words, Plaintiff and the Distributors share "a common classification as independent contractors, [a] common job function, common policies and procedures applicable to them, and [a] common compensation structure." (Doc. 66 at 14.) Plaintiff supports these allegations with his own testimony and discovery responses, Defendants' documents and corporate testimony, 19 exhibits, including six depositions of Defendants' corporate representatives, Plaintiff's deposition, representative contracts between Defendants and Distributors ("Distributor Agreements"), representative contracts between Defendants and its customers, a Franchise Disclosure Document, and Plaintiff's pay records. (*See* Doc. 66-1.)

Specifically, Plaintiff alleges that Defendants uniformly classify all Distributors in Arizona as independent contractors or franchisees pursuant to a Distributor Agreement which is unilaterally drafted by Flowers and which all Distributors must sign. (Doc. 66 at 5.) Although different versions of the Distributor Agreement are in effect, Plaintiff alleges they are substantially similar in all material respects, including compensation and job performance expectations. (*Id.* (citing Doc. 66-1, Exs. 9–11; Paulter Dep. 35:20–36:4, 37:9–40:18; Rich Dep. 73:10–21).) Distributors are the path to market for getting

Defendants' products from the bakeries to retail outlets. (Doc. 66-1, Ex. 3, Lord Dep: 11:1–6; Doc. 13 ¶ 41.) Distributors purchase distribution rights from Defendants and are responsible for ensuring customers in their territory are properly serviced. (Doc. 66 at 5.) This includes picking up fresh baked goods from warehouses and delivering them to customers; stocking and arranging merchandise, removing damaged and stale goods, and placing Flowers' advertising materials in customer outlets; inputting customer orders and completing paperwork; and driving personal vehicles to customer outlets for "pull ups" to restock and rotate stock. (*Id.* at 4; Doc. 13 ¶¶ 42–45.) Plaintiff alleges Defendants maintain extensive control over Distributors and that Distributors remain economically dependent on Defendants. (Doc. 66 at 5–8; Doc. 13 ¶¶ 50–56, 61–73.) With respect to compensation, Plaintiff alleges all Distributors in Arizona are compensated by Flowers based on a complex settlement formula. (Doc. 66 at 9; Doc. 66-1, Ex. 19; Ex. 13, Jeffrey Dep. 10:14–11:8; Doc. 13 ¶¶ 57–60, 83.)

At this stage, the allegations and supporting evidence satisfy the Court that the Distributors "share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. The Distributors perform similar job duties under similar contracts, are subject to the same oversight and performance expectations, and are compensated in the same way. The Distributors are subject to the same Flowers' policy or plan of classifying Distributors as independent contractors, and therefore face the same risk of not being paid overtime or the minimum wage as required by the FLSA. Whether the Distributors are independent contractors will be decided at a later stage of litigation. *See Harris v. Nat'l Waterproofing & Roofing LLC*, No. CV-21-01537-PHX-SPL, 2022 WL 4094149, at *3 (D. Ariz. Sept. 7, 2022) ("The Court will not review the underlying merits of the action . . . at th[e conditional certification] stage . . . .")

Defendant argues that Plaintiff has not met his burden because he lacks personal knowledge of practices in warehouses outside of Tucson and of facts about other Distributors, such as how many hours they work and the mix of products they sell and accounts they service. However, as detailed above, Plaintiff's allegations and supporting

evidence provide a reasonable basis for a class-wide injury to all Distributors in Arizona. In Rule 30(b)(6) depositions, Defendants' corporate representatives confirmed that all Distributors in Arizona are subject to the same compensation structure, job performance expectations, and many of the same policies. (Doc. 66-1, Ex. 3, Lord Dep. 10:18–12:3, 25:6–20, 34:3–18, 40:2–5, 54:6–55:6, 67:18–68:11, 68:22–69:5, 71:2–72:25, 85:3–86:23, 90:15–91:13, 114:1–115:10, 122:1–23; Ex. 5, Paulter Dep. 35:20–41:25, 47:1–23, 56:4–25, 57:8–58:1; Ex. 6, Rich Dep. 14:19–16:23, 18:11–19:2, 29:9–30:24, 74:1–24; Ex. 13, Jeffrey Dep. 10:14–11:8, 32:14–22; Ex. 14, Morgan Dep. 10:10–24; Ex. 15, Dodge Dep. 21:25–22:6.) By contrast, in *Colson* the court denied conditional certification where the information of defendant's out-of-state employment practices provided by plaintiff was "based on nothing more than her opinions" and the declarations of her attorney and another employee at the same location with a different position. 687 F. Supp. 2d at 928–29. Defendants have not provided any evidence that policies, performance expectations, and pay practices substantially vary between Distributors in Tucson and Distributors working out of other warehouses in Arizona. Even if they had, the Court need not consider Defendants' evidence at this stage. *Coyle*, 2016 WL 4529872, at *5. Moreover, specific variations among Distributors regarding hours worked, sales efforts made, frequency of management visits, or the mix of products sold or accounts serviced do not change the analysis here. *Scales*, 356 F. Supp. 3d at 885 ("Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members.").

Defendant next argues that conditional certification is improper because of the individualized inquiries involved in determining whether Distributors are independent contractors or employees and whether alternative exemptions apply. (Doc. 77 at 13–18.) But the economic realities test and FLSA exemptions are relevant at the decertification stage, not the conditional certification stage. *See Coyle*, 2016 WL 4529872, at *5–6. For the foregoing reasons, the Court will grant Plaintiff's request for conditional certification of Counts One and Two.

//

B. Limiting Notice

For the reasons stated above, the Court rejects Defendants' argument that notice be limited to distributors who operate, or have operated, out of the Tucson warehouse. (Doc. 77 at 18–19.) Defendants also argue notice should not be issued to potential class members who are subject to a mandatory arbitration agreement. (*Id.* at 19–20.) Generally, district courts within the Ninth Circuit determine whether potential opt-in plaintiffs are bound by an arbitration agreement at the decertification stage rather than the conditional certification stage. *See Harrington v. Cracker Barrel Country Store Inc.*, 713 F. Supp. 3d 568, 579–82 (D. Ariz. 2024) ("[A] final determination [of whether an employee is subject to arbitration] requires further fact inquiries that are better resolved at the second stage of certification."); *Flores v. Swift Transp. Co.*, No. CV 14-02900-AB (EX), 2014 WL 12639089, at *4 (C.D. Cal. Oct. 30, 2014) (authorizing notice despite defendants' argument that some potential opt-in plaintiffs would likely be bound by arbitration agreements). However, where "the court has already determined that [an] [a]rbitration [p]olicy is valid and defendants have already moved to compel arbitration as to some employees . . . some courts have excluded from the collective action notice any employees who are bound by arbitration agreements." *Longnecker v. Am. Express Co.*, No. 2:14-CV-0069-HRH, 2014 WL 4071662, at *6–7 (D. Ariz. Aug. 18, 2014).

Here, the Court has not examined an arbitration agreement between Defendants and any Distributor, nor has it determined the validity of such an agreement. Therefore, the Court will not limit the issuance of notice to Distributors who have not signed arbitration agreements.

C. Notice Plan & Content of Notice

Plaintiff requests that the Court approve the Proposed Notice and Consent to Opt-In forms that he submitted with the instant Motion. (Doc. 66-1 at 1–6, Exs. 1–2.) Regarding content, Defendants ask the Court to deny Plaintiff's request to use the proposed forms "because multiple aspects of Plaintiff's proposed notice are improper" and to "instead follow the typical procedure of ordering the parties to meet and confer to devise a mutually-

acceptable and accurate notice." (Doc. 77 at 21.) Defendants do not explain which aspects of Plaintiff's proposed notice forms they believe are improper, nor do they cite any law supporting their request that the Court order the parties to meet and confer. (*Id.*)

District courts have discretion regarding the form and content of notice to putative class members in a FLSA collective action. *Coyle*, 2016 WL 4529872, at *6. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Id.* (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)). The Court finds Plaintiff's proposed forms fair, accurate, and similar to the types of notice approved by other district courts. *See Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 106–08 (S.D.N.Y. 2003). Therefore, the Court approves the Proposed Notice and Consent to Opt-In forms for distribution. (Doc. 66-1 at 1–6, Exs. 1–2.)

Regarding the notice plan, Plaintiff requests notice be (1) mailed by first class mail to all current and former Distributors who worked in Arizona from September 15, 2019 through the date the notice is distributed; and (2) emailed to the Distributors at their last known email address. (Doc. 66 at 17.) Plaintiff proposes a 60-day deadline for filing the opt-in plaintiffs' consent forms with the Court. (*Id.*) Defendants do not object to the 60-day deadline but argue that notice should not be provided via email because notice via U.S. mail is sufficient and utilizing potential opt-in plaintiffs' email addresses raises privacy concerns. (Doc. 77 at 20 (citing *Hart*, 2013 WL 5965637, at *6).)

Although Defendants cite one case from the District of Arizona in which the court declined to approve notice via email, email notice is commonly approved by courts in this District and throughout the Ninth Circuit. *See, e.g.*, *Anthony v. Rise Servs. Inc.*, No. CV-22-00268-PHX-GMS, 2022 WL 3042854, at *3 (D. Ariz. Aug. 2, 2022). The Court finds that providing notice by both first-class mail and email "will sufficiently assure that potential collective action members receive actual notice of this case." *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009).

D. Expedited Discovery

Lastly, Plaintiff seeks expedited discovery of names, addresses, and email addresses of all current and former Distributors who worked in Arizona from September 15, 2019 through the date notice is distributed, in an electronic and importable format, within 14 days from the date of this Order. (Doc. 66 at 18.) Defendants assert that Plaintiff's request for information includes cell phone numbers, social security numbers, and dates of birth. (Doc. 77 at 20.) However, Plaintiff requests only names, addresses, and email addresses. (Doc. 78 at 17.) Defendants offer to pay for a claims administrator to issue notice, which would render discovery of this information unnecessary. (Doc. 77 at 20–21.) Plaintiff argues a case administrator "is an unnecessary cost and would cause harmful delay due to the running of the statute of limitations." (Doc. 78 at 17.) The Court agrees that timeliness concerns warrant discovery of the requested information so that Plaintiff's counsel may issue notice.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Conditional FLSA Certification and to Authorize Notice to Similarly Situated Persons Under 29 U.S.C. § 216(B) and for Expedited Discovery (Doc. 66) is **granted.**

2. The class of all current and former Distributors who worked in Arizona from September 15, 2019 through the date notice is distributed is conditionally certified with respect to Counts I and II of the FAC.

3. Plaintiff's Proposed Notice and Consent to Opt-In to Lawsuit forms are approved for distribution. (Doc. 66-1 at 1–6, Exs. 1–2.) Plaintiff is authorized to send notice to potential opt-in plaintiffs via mail and email. The Court adopts a 60-day deadline for filing consent forms with the Court, which shall run from the time the notice is mailed.

//
//
//

- 10 -

1  |  4. Defendant must provide Plaintiff's counsel with the names, addresses, and email addresses of all current and former Distributors who worked in Arizona from September 15, 2019 through the date notice is distributed in an electronic and importable format **within 14 days** from the date of this Order. Plaintiff's counsel shall utilize this information only for the purpose of issuing notice.

Dated this 28th day of February, 2025.

*Jennifer Zipps*
Jennifer G. Zipps
Chief United States District Judge